2210013. Ms. Bonella? Bonella? May I proceed? I have no support. Good morning. My name is Ms. Bonella. My issue is the statute of limitations and how Texas Civil Practice and Remedies Code 16.064 applies in this case. In this case, the district court, the federal district court dismissed because the district court held that the tolling statute, which is section 16.064, had expired. And the way that they arrived at this conclusion was through their interpretation of a case called Oscar Renda Contracting v. H&S Supply. However, they erroneously interpreted that case. They interpreted to say that the tolling period begins when the trial court's dismissal is issued rather than when the appellate court's dismissal is issued. What happened in the Renda case was that a plaintiff filed in Denton County. There was an appeal that went to the Second Court of Appeals, which sits in Fort Worth. There was lack of jurisdiction. The party refiled in proper court in the Tenth District, which sits in Waco, ended up in the Waco Court of Appeals. And that court, their holding was that explicitly that the earliest, so that the tolling period did not start to run until the Fort Worth, and they mean Court of Appeals, plenary power over it to judgment expired. And they refer to Texas Rules of Appellate Procedure 1928. In this case, Ms. Bullock filed her case in State District Court. State District Court dismissed her lack of jurisdiction on June 8, 2020. We appealed to the Second Court of Appeals in Fort Worth. They affirmed that dismissal on May 20th of 2021. Fifty-seven days later, on July 16th of 2021, we refiled in Federal District Court. So you're in time if the clock starts with the appellate court judgment? Yes, sir. And you're saying Oscar doesn't stand for the proposition that it starts with the district court? Correct. But in Oscar, it did start. It started in Oscar. It started when the appellate court's plenary power expired. But am I right that in Oscar, it was the appellate court that entered the dismissal in the first instance? The district court hadn't? Yes, they went to district court and then to the appellate court, and that first . . . Right, so that's just a flip that could be relevant here because there never was a district court dismissal judgment in Oscar. The Fort Worth appellate court dismissed it for want of jurisdiction. Yeah. So, therefore, there would have been no trial-level dismissal, but here, your client did get dismissed at the trial level. Correct. So, Oscar's just a little bit orthogonal on the whole issue, and in my opinion, I'm not saying you're wrong, but what would you point to as better authority that in the context of tolling and Texas law, the clock only starts at the conclusion of when appellate proceedings expire? What's the better authority if Oscar's just a little bit off point for both of you? In just a minute, and I'll tell you. Okay. Because, of course, while you're looking forward, they say, well, let's look at race judicata law. Let's look at, what's the case, Scurlock? Scurlock, yeah. Well, on Long Island Trust v. Dicker . . . That's our case. Yes. That certainly was assumed there. Would you call it sort of the necessary holding? That wasn't really the holding of the case, but it was the factual statement. I agree with you. Correct. That's our court. Do you have any good Texas authority on this point, or do you think it's just a little bit of an unanswered question? I think it is a little bit of an unanswered question, because I think because it's so obvious that when a person is entitled to an appeal, when they're dismissed from the court, nothing bad things is going to happen. The dismissal is going to stay. Thirty days later, the plenary power is gone, and the case is . . . But then, how do you harmonize that with, or do you discurve Scurlock in the fact that other consequences do begin at the district court judgment point? I don't think that Scurlock really applies to this case, because I think Scurlock applies to collateral estoppel and res judicata and simply says that that holding is for those issues. When is a judgment final for purposes of res judicata? We're not talking about collateral estoppel and res judicata. You're talking about tolling. Talking about tolling. You say the reason there's no authority that stands for it, and I'm even expanding the orbit to scholars, anyone, treatise, is just that it's so obvious. Yes. And, you know, in the Southern District of New York, in the Louis B. Rosenfeld case, that Judge Scheindlin really does a good job of explaining why . . . how ridiculous that position would be, because it would cause a party to litigate on two fronts, because if my case is dismissed over here in state court or one court, it doesn't matter which, and I have an appeal going over here, but I better hurry up and go file in this other court. I could end up with two live cases at the same time, which would put all parties in a really tenuous position and having two cases going, the same case going in two different courts. The parties are entitled to . . . I mean, that just doesn't work logistically. It makes no sense and doesn't work. Parties entitled to an appeal, once that . . . at least the earliest that that judgment is final for purposes of . . . to start the running of the tolling statute is when the appellate court signs a dismissal. Some courts have said, like Renda, after the 60-day plenary power of the court, dismissal, which in this case, we were inside those days, we were at fifty-seven days. That's the one issue in the case and that's the argument, right? It is. I hear . . . I'm here opposing counsel or continue? Well, I think what happened is just the way it's written, Renda's a little bit confusing when you start reading and they say the Fort Worth court. What they're talking about is the Fort Worth Court of Appeals because it actually came from a court in Denton County. So, they're talking about the appellate court, but they specifically say their conclusion, a judgment of dismissal becomes final for purposes of Section 16 when it disposes of all issues and parties in the case and the court power to alter the judgment has ended. Here, the Fort Worth Court, meaning the appellate court, plenary power over its judgment of dismissal expired on June 16th of 2003. See the appellate rules for those. They added those 60 days in. If you'll notice in the district court's opinion, they specifically say that the tolling starts on, let's see, June 8th, July 8th or 7th, 30 days later after the trial court dismissed it. That's undisputed, yeah. But that's an erroneous interpretation. That's it. Thank you. Thank you. Mr. Contreras. May it please the Court, good morning. Jason Contreras on behalf of the University of Texas at Arlington in this case. The main issue, when does the judgment of dismissal become final for purposes of the Texas Savings Clause? Can you talk up a little bit? Yes, sir. When does the judgment of dismissal become final for purposes of the Texas Savings Clause? As correctly determined by the Federal District Court in this case, it becomes final when an order of dismissal disposes of all parties and claims and the expiration of the trial court's plenary power. Now, that can happen, as discussed with opposing counsel, that can happen at the Court of Appeals, and it was Ms. Bullock, through the advice and guidance of her attorneys, as the master of her claims, she chose to freely and voluntarily bring her claims against the state, the University of Texas Arlington, essentially the state, first in state district court. During the course of that litigation in the state court case, Bullock was obviously given notice of, you know what, there's some sovereign immunity issues, can these federal causes of action that Bullock is asserting, can those be brought against the state in state court? Well, the state district court on that case said no, and granted, UT has pleaded the jurisdiction, it was subsequently affirmed on appeal by the Texas Court of Appeals out of Fort Worth, I believe, and essentially judged at the hearing on June 8th, 2020, the bottom line, applying the correct rule of law as stated in the RENDA case that . . . Just objectively speaking, RENDA did start the clock after the expiration of the appellate court's judgment, correct? Correct. RENDA doesn't stand for that in its holding. RENDA stands for the correct statement of law or the correct rule of law in this case that bottom line, in the first instance of a judgment or dismissal, when that happens, the reason that did not occur in the RENDA case in the state court is because those two claimants, the plaintiff brought a claim against the defendant, the defendant brought counterclaims, that case went to trial and there was a jury verdict in favor of both of those parties, and so that was, I guess procedurally, that's what happened in those particular procedures, procedural history did not happen in this case. So it's distinguishable, you heard me ask, but so what's your case with actually stands for the proposition you're offering us? What's your Texas case where prescription too late, district court dismissed, even though there was an appeal? Correct. Well, number one, that is the RENDA case . . . I know, I know, but . . . Which is basically the rule of law in the first instance of the order of dismissal. In this case, in the Bullock case, it happened with the . . . at the trial court level. I know that's your argument, but what's your authority for that? There is at least one other . . . there is a Fifth Circuit case, the case that was mentioned earlier, Long Island v. Dicker, from Fifth Circuit from 1982, and that's the situation in which Bullock could have remedied her limitations issue by applying the Texas Savings Clause in which the lawsuit was first filed in New York State District Court and it had been dismissed for want of jurisdiction. Now, the plaintiff in that case said, you know, how do I fix this? Well, then they refiled within the sixty days period allowed under the savings clause to refile in a different court, and where they refiled was a federal court in Texas. So that is . . . You accept, even though Long Island, I think, is unpublished, you accept that it's exactly right. That's the law. I would say that that would directly apply to this case what Bullock should have done to take advantage of that sixty day . . . I may be wrong, but I thought in Long Island the clock started upon the expiration of the appellate court's ruling. I thought it stood for precisely the opposite proposition. In the statement of the case . . . I believe . . . The dismissal at the district court level would have been too late, but for appeal. Appeal, not too late. Am I wrong? I believe that the holding involved a previous suit filed in state court had been dismissed for want of jurisdiction and it was refiled within sixty days of that state court dismissal, not on appeal. And I believe that is the proper procedural history in that case. That makes sense. I mean, if the party wants to appeal, that means he's got to go . . . be going in two courts? No, Judge. Bullock could have simply . . . after the underlying state court dismissal, Bullock could have simply refiled the case where the proper court in this case would have been federal court. Bullock could have simply refiled and began a new case in federal district court. He'd give up his appeal, in other words. Correct. Correct. Because, I mean, it was pretty clear at that point that . . . and Bullock was told, yes, the state district court got it correct. These claims are barred by sovereign immunity. So, she was told that twice. And instead, she chose through, of course, the guidance and advice of her attorneys, let's just pursue an appeal and see what happens. Well, in order to have avoided that and now be dealt with statute of savings clause, they could have avoided that whole issue that we're here for today, Judge, by simply refiling in federal court where the case should have been filed in the first place. And to the extent that Bullock alleges that the trial court misquoted Oscar Render . . . misquoted the Oscar Render case, that is also incorrect. If you read the federal district court's opinion on this and compare it to the statement of law in Render, that is substantively the correct rule of law here that applies to this case. And once again, a judgment or dismissal becomes final for purposes of the savings clause when it disposes of all issues and all parties in the case and the court's plenary power to alter the judgment ended. And that's exactly what happened in the underlying state district court case. And that is when the savings clause becomes operative. And that's essentially the bottom line here on what happened in this case. And unfortunately, Bullock simply, through the advice of her attorneys, chose to . . . chose not to follow the savings clause and ignore that and say, well, let's just, you know, pursue an appeal in state court and then this is essentially what they're left with, I think, Judge, that Bullock, I believe, was left with a malpractice claim against her attorneys for misapplying the law, filing their lawsuit in the wrong court in the first instance, and then challenging it on an appeal when they could have fixed this entire issue by simply refiling in federal district court as permitted under the application of the Texas savings clause. And so essentially what controls in this case is the trial court's final judgment, not an appellate opinion that affirms it. That's not when the clock begins under the Texas savings clause under the application. And so once again, Bullock had options to remedy bringing her claims in the And so it wasn't just after the 30 days of the expiration of the trial court, state trial court's plenary jurisdiction. She had another 60 days after that, which would have brought her to September 5th, 2020, was the expiration of the 60-day savings clause. And in the record, as it's clearly established, she didn't meet that deadline. She pursued her appeal and did not file in the proper court until July 16th, 2021. That was when Bullock filed her case in the federal district court. And clearly, she missed not only the savings clause 60-day extension, but she also missed her statute of limitations deadline, which would have been December 2020. So we're talking about roughly at least five or six months, seven to eight months after the expiration of the savings clause, six to eight months after the expiration of the statute of limitations. And that is what is the proper determination as found by the trial court and their application of the Texas savings clause in this case. So to say, for Bullock to say that that is not the correct interpretation of the applicable rule of law in this case is simply incorrect. Once again, it was the dismissal that occurred at the trial court. There was no order of dismissal in the underlying state court of appeals case. That was simply an opinion or order that affirmed the trial court. So procedurally, I think there's a difference. And even the language of the Texas savings clause itself, it makes no reference to the outcome on appeal. Texas Civil Practice and Remedies Code section . . . It's taking me a while to find it. Just so we're on the same page, when you're saying you accept the ruling and the statement of the case in Long Island Trust Company, we're both talking about a case that's our court's case, 659 F. 2nd, 641? Correct. Okay. And when I read that, it says, Long Island suit, Gemstone, Dicker, New York State Court obtained a judgment against Gemstone. Dicker, however, was dismissed from the suit for water personal jurisdiction. Long Island appealed, but the dismissal was affirmed on May 16, 1977. So it seems like exactly our posture. Accordingly, Long Island filed the suit against Dicker in the court below on June 23, 1977, well within the 60 days after the dismissal became final. Okay, so the court's saying the dismissal of the district court became final once the appeal affirmed it, hence 60-day clock was satisfied. Am I reading that wrong? No, you are not, Your Honor. That's her argument. Well, it was under the predecessor Texas Savings Clause statute, which was Article 5539A. So that's at least one distinction that can be made here for purposes of the application of the Savings Clause. But additionally, what the language of the Savings Clause under the current statute that applies here in this case, not the predecessor statute, what the applicable statute here, the language is, because of lack of jurisdiction in the trial court where the action was filed, the action is dismissed. So at least one— But when you said you accepted that as authority on this issue, your answer now is no, that doesn't apply because the law has changed. That's why I was confused. If we apply Long Island Trust, you lose. But your argument now is the Texas law has changed. Is that correct or no? That's correct. Since this time, since 1982, which was the predecessor Savings Clause statute, clearly it's the Texas Savings Clause statute has changed, and the applicable statute that applies now is the current version, which is Texas Civil Practice and Remedies Code Section 16.064, subsection A. And in that language, under the current Texas Savings Clause that applies here, not the predecessor statute. Do you have any authority, Texas law, saying this is a sea change? Watch out, litigants. Because dismissal, the clock starts now in the district court, even if you appeal it. Do you have any authority, scholarly or judicial, that has said this is a complete transformation of our timing rules? Does anyone recognize the proposition you're saying? No, Judge, and I think that was echoed when you were, when the opposing counsel was on, was that it's kind of an open question of law here on that point. When does the dismissal order become final? Open question in Texas, and you will have to decide it. Yes. Correct, Judge. Do you think we should look to raise judicata collateral estoppel law? Is that the argument? Well, for purposes of the issue here in this case . . . Is that your best case, Scurlock and the law that arises under preclusion? Yes. Yes. An order to dismissal becomes final despite the taking of an appeal. And at least we can point to Scurlock for that proposition of law as was cited by the Federal District Court in Your Honor's opinion in that case, or in the underlying opinion for that position. And then we also have the Street v. Honorable Second Court of Appeals for the proposition of finality of judgment for Stowers' actions. And that court addresses the term final as the planted judgments can have more than one meaning. But here, the meaning of a final judgment as set forth in the correct statement of law that applies here is in Oscar Renda v. H&A Supply Company, Your Honor, that says bottom line is the judgment of dismissal becomes final, and that is the current controlling law that applies here in Bullock. For purposes of the Texas Savings Clause, Section 16.064 . . . We've read Oscar. Okay. Are you giving the argument that sounds . . . Yes. Yes. And that is our position, Judge, at this point. Our position is, once again, the Federal District Court opinion did properly apply the dates that we are left with here on this case as to what happened when the state court dismissal on June 8, 2020, another thirty days for the . . . We can do the math. Yes. Under the Savings Clause and under those controlling dates of what happened when and under the application of the controlling rule of law in this case as set forth in Renda, the bottom line is that Bullock did not meet those deadlines. And unfortunately for her, that's the law and that is what she is stuck with the end result as the Federal District Court correctly held that her claims are now barred, not only by the statute of limitations but because she did not meet the additional sixty day time period that was fully available to her to simply refile this case in a different court as permitted under that statute, which she clearly could have done. Instead, she incorrectly and erroneously decided to pursue an appeal in the Texas State Court. We definitely know the procedural history. Okay. Yes. That is our position, Judge. And based on the controlling law and the trial court's opinion in this case should be affirmed and the case dismissed. Thank you for the court's time. Thank you, sir. We have five minutes on rebuttal, Ms. Bonilla. Your Honor, I think all litigants have the right to at least an appeal to oversee the trial court if they feel there was an error of law and that's what we did. There are mountains of cases in Texas district courts that involve federal questions because Texas district courts are courts of general jurisdiction and can hear anything as long as it is not taken away by statute. I respectfully submit that the Court of Appeals in Fort Worth got it wrong. We did timely file the lawsuit. We timely perfected an appeal and as soon as that appeal was . . . the appeal affirmed the dismissal, we timely filed within sixty days in federal district court. I know you've read Brenda, but the questions presented there specifically are in the court's own words. The appellate court's judgment became final on the date of issuance, when the appellate court's plenary power expired or when the appellate court issued its mandate. Strictly talking about appellate court and there are other Texas courts, Republic National Bank of Dallas v. Roger that is one of them that have considered the date that the dismissal is affirmed on appeal as the key date on which an order becomes final. I've also quoted to you Lewis in Long Island. I respectfully ask you to remand this to the top court. Thank you. Thank you.